## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ARI BALABANIAN and DATA BUSINESS SOLLUTIONS, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 10 C 6736 |
| THOMSON REUTERS (LEGAL) INC. d/b/a THOMSON REUTERS and d/b/a WESTLAW, | ) ) ) ) | Honorable Joan B. Gottschall |
| Defendants. | ) | |

### ANSWER AND AFFIRMATIVE DEFENSE

Defendant Thomson Reuters (Legal) Inc. d/b/a Thomson Reuters and d/b/a Westlaw ("Thomson Reuters"), by its attorneys, for its answer and affirmative defense to the complaint of the plaintiffs Ari Balabanian and Data Business Solutions, states as follows:

### ANSWER

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1332 as the matter in controversy, exclusive of interest and costs, exceeds $75,000.00 and is between citizens of Canada and a citizen of Minnesota.

**ANSWER:** Thomson Reuters admits the allegations of Paragraph 1.


2.     The venue of this Court is invoked pursuant to 28 U.S.C. Section 1391(a)(1) and (c) as Defendant does substantial business on a regular basis in the Northern District of Illinois and is subject to personal jurisdiction in this District, and Section 1391(a)(2).

**ANSWER:** Thomson Reuters admits the allegations of Paragraph 2.

3.      Plaintiff Ari Balabanian ("Balabanian") is a citizen of Canada.

**ANSWER:**  Thomson Reuters admits the allegations of Paragraph 3.


4.      Plaintiff Data Business Solutions is a Canadian corporation with its principal place of business in Canada.

**ANSWER:**  Thomson Reuters admits the allegations of Paragraph 4.


5.      Defendant Thomson Reuters (Legal) Inc. ("Thomson") is a Minnesota corporation with its principal place of business in Minnesota

**ANSWER:**  Thomson Reuters admits the allegations of Paragraph 5.


6.      At all times mentioned herein Thomson was doing business as Thomson Reuters and was doing business as Westlaw.

**ANSWER:**  Thomson Reuters denies the allegations of Paragraph 6.  Thomson Reuters affirmatively states that it is the parent corporation of West Publishing Corporation, a Minnesota corporation with its principal place of business in Minnesota, which offers the Westlaw service in the United States.


7.      In 2008, the Federal Trade Commission ("FTC") charged defendants Balabanian and U.S. Data Business Solutions [sic] in a civil complaint, No. 08-CV-2783, in district court in the Northern District of Illinois.

**ANSWER:**  Thomson Reuters believes that the reference in Paragraph 7 to "U.S. Data Business Solutions" is an inadvertently erroneous reference to plaintiff Data Business Solutions, Inc.  Thomson Reuters admits that in 2008, the FTC filed a civil complaint in this court, which was assigned case No. 08-CV-2783, that named both of the plaintiffs in this case as defendants, along with certain other defendants.

8.      On or about August 9, 2010, Balabanian and Data Business

Solutions were dismissed as defendants in said case at the request of the FTC.

**ANSWER:** Thomson Reuters denies the allegations of Paragraph 8. Thomson Reuters affirmatively states that the docket in case No. 08-CV-2783 shows that a Stipulated Order of Voluntary Dismissal of Defendants Data Business Solutions, Inc. and Ari Balabanian was entered on March 30, 2010.

9.   On or about August 9, 2010, the FTC issued a press release which, *inter alia*, announced that it had "permanently halted the operations of Canadian con artists" operating through Internet Listing Service and also announced that "charges against Ari Balabanian and Data Business Solutions were dismissed by the court at the FTC's request."

**ANSWER:** Thomson Reuters admits the allegations of Paragraph 9.

10.   On or about August 10, 2010, the FTC's aforesaid press release was published by Westlaw on the Internet. A copy of said publication is attached hereto as Exhibit A.

**ANSWER:** Thomson Reuters denies the allegations of Paragraph 10. Thomson Reuters affirmatively states that on or about August 10, 2010 the FTC's press release was placed on Westlaw in the form attached to the Complaint as Exhibit A. Thomson Reuters further states that Westlaw is a proprietary searchable archival database of case law, state and federal statutes, administrative codes, newspaper and magazine articles, public records, law journals, law reviews, treatises, legal forms and other information resources, including press releases originally published by the FTC. The content of Westlaw is not available to the general public; rather, it is available only to paying subscribers, or to credit card users who pay a fee based on documents

retrieved. Further, articles and other content on Westlaw are not displayed unless a user searches for it, and then selects it to read.

11. On or about August 10, 2010, Westlaw published a report on the Internet entitled "FTC Settles Bogus Domain Name Registration Lawsuit" which states, *inter alia*:

> "Data Business Solutions, d/b/a Internet Listing Service has agreed not to bill consumers for Internet domain name registration and search optimization services that the company does not provide, as part of a settlement of litigation with the Federal Trade Commission."

A copy of said publication is attached hereto as Exhibit B. Defendant's aforesaid statement about Data Business Solutions was false.

**ANSWER:** Thomson Reuters affirmatively states that on or about August 10, 2010 an article originally published by Telecommunications Reports International, Inc. on the TR Daily website, which is a proprietary, subscription-based internet website, was placed on Westlaw. Thomson Reuters further states that Westlaw is a proprietary searchable archival database of case law, state and federal statutes, administrative codes, newspaper and magazine articles, public records, law journals, law reviews, treatises, legal forms and other information resources, including articles originally published by TR Daily. The content of Westlaw is not available to the general public; rather, it is available only to paying subscribers, or to credit card users who pay a fee based on documents retrieved. Further, articles and other content on Westlaw are not displayed unless a user searches for it, and then selects it to read. Thomson Reuters admits that a copy of the TR Daily article is attached to the Complaint as Exhibit B, and that it contains the language quoted in

Paragraph 11. Thomson Reuters lacks knowledge sufficient to form a belief as to the truth of the allegation that the quoted statement was false. Thomson Reuters denies the remaining allegations of Paragraph 11.

12. On August 20, 2010, Balabanian e-mailed the Defendant, through Defendant's attorneys, and informed them that its publication falsely stated that there was a judgment against him, when in reality, he was dismissed from the FTC's lawsuit. In response, on August 20 and August 23, 2010 Defendant's attorneys e-mailed Balabanian acknowledging an "error" and promising that the erroneous article would be removed and rewritten. Copies of said e-mails are attached here to as Exhibit C.

**ANSWER:** Thomson Reuters admits that Balabanian sent it an e-mail on August 20, 2010, and denies that the e-mail was sent to it through its attorneys. Thomson Reuters admits that a copy of Balabanian's August 20, 2010 e-mail is included in Exhibit C to the Complaint, and that in this e-mail Balabanian told Thomson Reuters that he was dismissed from the FTC's lawsuit. Thomson Reuters admits that copies of e-mails that one of its employees sent to Balabanian on August 20, 2010 and August 23, 2010 are also included in Exhibit C to the Complaint. Thomson Reuters denies the remaining allegations of Paragraph 12.

13. Thereafter, on or about August 31, 2010, Westlaw again published a report on the Internet entitled "FTC Shuts Down Cross-Border Domain-Name Scam FTC v. Data Bus. Solutions" which states, *inter alia*:

"The Federal Trade Commission has permanently closed down a Toronto, Canada-based group of con artists who bilked Internet domain name holders of more than $4 million through bogus renewal invoices....The FTC announced a settlement that shut down Internet Listing Service Corp. and five other corporate entities. The investigation also resulted in judgments against defendants Ari Balabanian...." A copy of said publication is attached hereto as Exhibit D. Defendant's aforesaid statement about Balabanian and its aforesaid reference to Data Business Solutions were false.

**ANSWER:**  Thomson Reuters admits that the article attached to the Complaint as Exhibit D contains the language quoted in Paragraph 13.  Thomson Reuters admits that no final judgment was entered against Balabanian in the FTC lawsuit referred to in Paragraph 7 of the Complaint.  Thomson Reuters denies that the article makes any reference to Data Business Solutions.  Thomson Reuters affirmatively states that on or about August 31, 2010 an article in the form attached to the Complaint as Exhibit D was placed on Westlaw, which is a proprietary searchable archival database of case law, state and federal statutes, administrative codes, newspaper and magazine articles, public records, law journals, law reviews, treatises, legal forms and other information resources.  The content of Westlaw is not available to the general public; rather, it is available only to paying subscribers, or to credit card users who pay a fee based on documents retrieved.  Further, articles and other content on Westlaw are not displayed unless a user searches for it, and then selects it to read.  Thomson Reuters denies the remaining allegations of Paragraph 13.

14.    Thereafter, on or about September 1, 2010, Westlaw again published a report on the Internet entitled "Online Fraud: FTC Shuts Down Cross-Border Domain-Name Scam, FTC v. Data Bus. Solutions" which states, *inter alia*:

"The Federal Trade Commission has permanently closed down a Toronto, Canada-based group of con artists who bilked Internet domain name holders of more than $4 million through bogus renewal invoices. The FTC announced a settlement that shut down Internet Listing Service Corp. and five other corporate entities. The investigation also resulted in judgments against defendants Ari Balabanian...." A copy of said publication is attached hereto as Exhibit E. Defendant's aforesaid statement about Balabanian and its aforesaid reference to Data Business Solutions were false.

**ANSWER:**   Thomson Reuters lacks knowledge sufficient to form a belief as to

the truth of the allegations of Paragraph 14.


      15.    Defendant knew that its aforesaid false statements about Plaintiff
and its false references about Data Business Solutions were false, as
Defendant had actual knowledge that the charges against Plaintiffs had been
dismissed at the request of the FTC.

**ANSWER:**   Thomson Reuters denies the allegations of paragraph 15.

### AFFIRMATIVE DEFENSE

1.    The Westlaw service provided by Thomson Reuters's subsidiary West

Publishing Corporation is an "interactive computer service", as that term is

defined by Section 230 of the Communications Decency Act, 47 U.S.C. §

230(f)(2), in that it is an "information service, system, or access software

provider that provides or enables computer access by multiple users to a

computer server."

2.    The article attached to the Complaint as Exhibit B was provided to

Westlaw by TR Daily.

3.    TR Daily is an "information content provider" as that term is defined by

Section 230 of the Communications Decency Act, 47 U.S.C. § 230(f)(3), in that

it is an "entity that is responsible, in whole or in part, for the creation or

development of information provided through the Internet or any other

interactive computer service."

4.    Section 230 of the Communications Decency Act, at 47 U.S.C. §

230(c)(1), states that "No provider or user of an interactive computer service

shall be treated as the publisher or speaker of any information provided by

another information content provider."

5.      Because the article attached to the Complaint as Exhibit B was provided to Westlaw by another information content provider, Thomson Reuters cannot be treated as the publisher of that article under Section 230 of the Communications Decency Act, and Thomson Reuters is therefore immune from any liability that would be dependent on it publishing that article, including any liability to plaintiffs for defamation arising out of any allegedly untruthful statements in that article.

WHEREFORE, defendant Thomson Reuters (Legal) Inc. asks for judgment in its favor against plaintiffs Ari Balabanian and Data Business Solutions, and that the Court grant it such further relief as it deems just and proper.

DATED:      January 7, 2011

                                        THOMSON REUTERS (LEGAL) INC.


                                        By:   /s/ Jeffrey H. Bergman
                                              One of Its Attorneys

Jeffrey H. Bergman
UNGARETTI & HARRIS LLP
70 West Madison Street
Suite 3500
Chicago, Illinois 60602
(312) 977- 4400

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that, on the 7th day of January, 2011, I caused a true and correct copy of the foregoing present Defendant Thomson Reuters (Legal) Inc.'s Answer to Complaint to be served electronically by CM/ECF on the persons below registered to receive electronic service:

Anthony DiVincenzo
Richard Schoenfeld
DiVincenzo Schoenfeld Swarztman
33 N. LaSalle, Suite 2900
Chicago, Illinois 60602

/s/ Jeffrey H. Bergman
Jeffrey H. Bergman

1850165-1